UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-10032-CR-MARTINEZ/SNOW

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

JULIO BRAVO PINEDA,
ANDRES ALBETO DAVILA-MENDOZA,
and OTMAR SING GONZALEZ,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on the Defendant Julio Bravo Pineda's Motion to Dismiss Indictment Based on Lack of Jurisdiction, and Unconstitutionality of the Statute as Applied (ECF No. 27), adopted by Defendants Andres Albeto Davila-Mendoza and Otmar Sing Gonzlez (ECF No. 32), which was referred to United States Magistrate Judge, Lurana S. Snow, for Report and Recommendation.

The Defendants are charged by indictment with conspiracy to possess with intent to distribute and possession with intent to distribute 1,000 kilograms or more of marijuana while on board a vessel subject to the jurisdiction of the United States, in violation of 47 U.S.C. §§ 70506(a) and 70503(a)(1). They seek to dismiss the indictment on the grounds that the United States lacks subject matter jurisdiction over an offense committed by foreign nationals in the territorial waters of another country, and that the statutes are unconstitutional because they violate the Defendants' rights to due process of law. The Motion is fully briefed and oral argument was conducted on December 9, 2016.

# I. FACTS

For purposes of the instant Motion, the pertinent facts are not in dispute. On June 4, 2016, the Defendants were on board a vessel spotted by a United States Marine Patrol aircraft while the vessel was floating in the territorial waters of Jamaica. The United States Coast Guard (USCG) obtained permission from the Jamaican Government to enter Jamaican territorial waters for the purpose of investigating, boarding and searching the vessel. During the ensuing boarding and search, USCG officers discovered the three Defendants on board, as well as 164 bales of marijuana, weighing approximately 3,500 kilograms.

Defendant Julio Bravo Pineda identified himself to USCG personnel as the vessel's captain, and stated that the vessel was registered in Costa Rica and was en route from Jamaica to Costa Rica. None of the Defendants is a citizen or resident of the United States. On June 9, 2016, the United States government submitted an embassy note to the Jamaican government requesting that Jamaica waive its primary right to exercise jurisdiction over the vessel, its cargo and its crew. By formal response dated June 20, 2016, the Jamaican government consented to the enforcement of United States law by the United States in this matter, and waived its primary right to exercise jurisdiction over the vessel, its cargo and its crew. Thereafter, the Defendants were transported to the United States, with Key West being the port of entry.

## II. RECOMMENDATIONS OF LAW

### A. Extraterritorial Application of the MDLEA

The Defendants contend that the provisions of the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. § 70501, *et seq.*, which authorize prosecution of foreign nationals for acts which occurred in foreign territory are unconstitutional as an unlawful exercise of Congressional authority. They primarily rely on United States v. Bellaizac-Hurtado, 700 F.3d 1245 (11th Cir. 2012), which reversed the conviction of foreign defendants charged with violating the MDLEA within the territorial waters of Panama. The Eleventh Circuit concluded that the Offences Clause of Article I

of the United States Constitution, which grants Congress the power to define and punish piracies and felonies committed on the high seas, as well as offenses against the law of nations, does not authorize Congress to criminalize drug trafficking within the territorial waters of a foreign nation. In so holding, the Court noted that the United States had not offered any alternative provision upon which the Act could be sustained as constitutional.  Id. at 1258.

The Government primarily relies on the more recent case of United States v. Baston, 818 F.3d 651 (11th Cir. 2016) which upheld, under the Foreign Commerce Clause, the application of the federal sex trafficking statutes to acts committed in Australia.  In response to Baston's argument that Bellaizac-Hurtado precluded such application, Judge Pryor (who also authored the opinion in Bellaizac-Hurtado) wrote: "If the government had invoked the Foreign Commerce Clause in *Bellaizac-Hurtado* we might have reached a different result."  Baston, 818 F.3d at 667.

In Baston, the court began by noting that Article I gives Congress the power to regulate commerce with foreign nations.  Id.  The court explained that Congress' powers under the Foreign Commerce Clause are "plenary," and because this Clause does not pose the same federalism concerns that limit the scope of the Interstate Commerce Clause, Congress' power to regulate foreign commerce may be broader than its power to regulate interstate commerce.  Id. at 668.  For purposes of its analysis, however, the Baston court determined that

> Congress' powers under the Foreign Commerce Clause includes at least the power to regulate the "channels" of commerce between the United States and other countries, the "instrumentalities" of commerce between the United States and other countries, and activities that have a "substantial effect" on commerce between the United States and other countries.

Id.  The court concluded that the 18 U.S.C. § 1596(a), which gives extraterritorial application to the crime of sex trafficking defined in 18 U.S.C. § 1591, was constitutional as a regulation of activities that have a substantial effect on foreign commerce.  The court determined that Congress had a rational basis to conclude that such conduct, even when occurring exclusively overseas, was part of an economic class of activities that have a substantial effect on commerce between the United

States and other countries.  Id.  In so holding, the court noted that in 18 U.S.C. § 7101(b)(12), Congress made an explicit finding that trafficking of persons has an aggregate economic impact on interstate and foreign commerce.  Id. at 669.

In the instant case, the Government argues that the Baston analysis should be applied, and this Court should find that the MDLEA is constitutional based on the powers conferred upon Congress by the Foreign Commerce Clause.  The Government notes that in 46 U.S.C. § 70501(1), Congress explicitly found that "trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States," and provided in § 70503(b) that the MDLEA extends to acts committed outside the territorial jurisdiction of the United States.  Additionally, under § 70502(c)(1)(E), a vessel is subject to the jurisdiction of the United States while in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States.  The Government asserts that the MDLEA is a comprehensive regulatory scheme addressing the international drug trade, and that in criminalizing drug offenses on vessels subject to the jurisdiction of the United States, Congress had a rational basis to conclude that such conduct was part of an economic class of activities that have a substantial effect on commerce between the United States and other countries.

In response, the Defendants argue that (1) the Foreign Commerce Clause does not empower Congress to regulate commerce among foreign nations, only commerce between foreign nations and the United States; (2) the language in Baston, suggesting that the result in Bellaizac-Hurtado might have been different if the Government had argued that the MDLEA is constitutional under the Foreign Commerce clause, is mere *dicta*; (3) Baston is distinguishable because the Defendant there had significant ties to the United States and proceeds of his crime were transmitted into the United States, and because the statute in question limited the extra-territorial jurisdiction of the United States to instances where the Defendant was a United States national or permanent

4

resident or was present in the United States; (4) the MDLEA is not a comprehensive regulatory scheme which regulates international drug trade, since each nation has its own drug laws; (5) the Defendants were not engaged in any commerce with the United States; and (6) the Foreign Commerce Clause has never been applied without a nexus to the United States.

The undersigned agrees that Judge Pryor's comment in Baston, that Bellaizac-Hurtado might have been decided differently if the Government had argued that extra-territorial application of the MDLEA was supported by the Foreign Commerce Clause, is *dicta*. However, in light of the fact that the same judge authored both opinions, the statement is at least a strong hint that the Eleventh Circuit might look favorably on a Commerce Clause analysis.

Regarding the Defendants' argument that the Foreign Commerce Clause can apply only to commerce with the United States, Batson clearly held that Congress has the power to regulate and activities that have a substantial effect on commerce between the United States and other countries. There can be no doubt that international drug smuggling has a substantial effect on foreign commerce. United States v. Knowles, 2016 WL 3365373 *11 (D.C. D.C. June 16, 2016) (upholding under the Foreign Commerce Clause the drug trafficking prosecution of foreign nationals on foreign soil, where the only nexus with the United States was the aircraft registration). Similarly, the Baston decision did not rest on the facts that the defendant had numerous ties to the United States and the statute in question applied only to United States citizens or residents, since the issue presented was the constitutionality of an order directing restitution to an Australian citizen and resident for acts of prostitution which occurred only in Australia. Baston explicitly addressed Congress' power to regulate sex trafficking, even when it occurs exclusively overseas. Batson, 818 F.3d at 668.

The Defendants also argue that the MDLEA is not part of a comprehensive regulatory scheme, since each nation has its own drug laws. This argument must fail under Baston, where there was no suggestion that sex trafficking laws were part of a multi-national scheme, and presumably

sex trafficking laws also vary from nation to nation. Moreover, as the Government points out, the MDLEA was enacted in the midst of lengthy negotiations which led up to the 1988 United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances ("the 1988 Convention"), which "makes clear that the international community was deeply concerned about the economic effects of international drug trafficking. . . . and would be meeting to update its treaty obligations to address this pressing issue." Knowles, 2016 WL 3365373 *12.

The Defendants' final assertion, that the Foreign Commerce Clause has never been applied without some nexus to the United States, is correct only if "nexus" is limited to geographical or national contacts. Clearly another type of nexus with United States exists with respect to activities which have a substantial effect on commerce between the United States and other countries. Additionally, a well-recognized principle of international penal jurisdiction, the protective principle, permits a nation to punish conduct which threatens its security as a state and is generally recognized as a crime under the law of states that have reasonably developed legal systems. Baston, 818 F.3d at 670; United States v. Gonzalez, 776 F. 2d 931, 938-39 (11th Cir. 1985). This principle, which does not require proof of an actual or intended effect on the United States, but only a potential adverse effect, was explicitly invoked by Congress in that portion of the MDLEA which states that "trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501(1). Finally, as the Government argued in the instant case, the small number of cases construing the breadth of the Foreign Commerce Clause can be expected to increase in step with globalization.

Based on the reasoning of Baston, the undersigned finds that Congress had a rational basis for concluding that the activity of drug trafficking within the territorial waters of a foreign nation was part of an economic class of activities that have a substantial effect on commerce between the United States and other countries. Therefore, the application of 46 U.S.C. Section 70502(c)(1)(E)

6

to acts occurring within the territorial limits of a foreign nation is a lawful exercise of Congress' power under the Foreign Commerce Clause.

### B. Due Process

The Defendants also assert that the application of this statute to them violates their right to Due Process because they are foreign citizens who were engaged in conduct on board a foreign vessel in foreign territorial waters. "The Due Process Clause prohibits the exercise of extraterritorial jurisdiction over a defendant when it would be 'arbitrary or fundamentally unfair.'" Baston, 818 F.3d at 669 (quoting United States v. Ibarguen-Mosquera, 634 F.2d 1370, 1378 (11th Cir. 2011)). Compliance with international law, although not a requirement, satisfies due process because it puts a defendant on notice that he could be subjected to the jurisdiction of the United States. Baston, 818 F.3d at 669.

In United States v. Gonzalez, 776 F. 2d 931, 938-39 (11th Cir. 1985), the defendants argued that 21 U.S.C. Section 955a(c), which prohibited possession of marijuana with intent to distribute within a "customs enforcement area" did not give fair notice of what conduct violated the law and what did not. The court first noted that the statute, which permitted the United States to prosecute foreign nationals on foreign vessels, with the consent of the nation of vessel registry, complied with international law because it was enacted pursuant to the protective principle of international jurisdiction. Id. at 938. The Court found that there was nothing vague about the statute, which provided clear notice of what was forbidden. Thus, "[t]hose embarking on voyages with holds full of illicit narcotics, conduct which is contrary to the laws of all reasonably developed legal systems, do so with awareness of the risk that their government may consent to enforcement of United States' laws against the vessel." Id. at 940.

In Baston, the court also found that the prosecution by the United States of sex trafficking anywhere in the world complied with international law under the protective principle of jurisdiction, and pointed to the adoption of various treaties pertaining to sex trafficking as evidence

that countries with developed legal systems recognize such conduct as criminal. Baston, 818 F.3d at 670. In the instant case, the 1988 Convention provides "'global notice that certain generally condemned acts are subject to prosecution by any party to the treaty' and . . . 'the Due Process Clause demands no more.'" Knowles, 2016 WL 3365373 *16 (quoting United States v. Ali, 718 F.3d 929, 944 (D.C.Cir. 2013)).

The Defendants argue that they could not have been on notice that their conduct violated United States law because of the 11th Circuit decision in Bellaizac-Hurtado. However, that case held only that Congress was not empowered to criminalize foreign drug trafficking under the Offences Clause, which was the only argument advanced by the Government. Under the analyses of Gonzalez and Baston, the prosecution of the Defendants, as foreign nationals on board a foreign vessel in foreign waters, under 46 U.S.C. Section 70502(c)(1)(E) of the MDLEA, complies with the protective principle of international law and thus satisfies due process.

## **CONCLUSION**

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Defendant Julio Bravo Pineda's Motion to Dismiss Indictment Based on Lack of Jurisdiction, and Unconstitutionality of the Statute as Applied (ECF No. 27), adopted by Defendants Andres Alberto Davila-Mendoza and Otmar Sing Gonzlez (ECF No. 32) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. §

636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

    DONE AND SUBMITTED at Key West, Florida, this 12th day of December, 2016.

                                                    /s/ Lurana S. Snow
                                                  LURANA S. SNOW
Copies to:                                       UNITED STATES MAGISTRATE JUDGE
All Counsel of Record